Citation Nr: 1550151 
Decision Date: 11/30/15 Archive Date: 12/04/15

DOCKET NO. 11-33 045 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUE

Entitlement to an increased rating for bilateral hearing loss, currently rated as noncompensable prior to June 6, 2014; and rated as 20 percent disabling effective June 6, 2014 


REPRESENTATION

Appellant represented by: Texas Veterans Commission


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

M. Prem, Counsel


INTRODUCTION

The Veteran served on active duty from September 1971 to September 1973.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from a January 2009 rating decision by a Regional Office (RO) of the Department of Veterans Affairs (VA). This matter was remanded in April 2014 and February 2015 for further development. 

The January 2009 rating decision denied a compensable rating for bilateral hearing loss. However, the RO issued a November 2014 rating decision in which it increased the Veteran's rating to 20 percent effective June 6, 2014. Consequently, there are two distinct time periods to consider. 

The Veteran presented testimony at a Board hearing in September 2013. A transcript of the hearing is associated with the Veteran's claims folder. 


FINDINGS OF FACT

1. Prior to March 17, 2014, the Veteran's service-connected bilateral hearing loss disability was productive of level II (October 2008) and III (March 2012) hearing acuity in the right ear and level IV (October 2008) and II (March 2012) hearing acuity in the left ear. 

2. Effective March 17, 2014, the Veteran's service-connected bilateral hearing loss disability was productive of level V hearing acuity in the right ear and level V hearing acuity in the left ear. 


CONCLUSIONS OF LAW

1. Prior to March 17, 2014, the criteria for entitlement to a compensable rating for the Veteran's service-connected bilateral hearing loss had not been met. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107 (West 2002 & Supp. 2014); 38 C.F.R. §§ 4.85, 4.86, Diagnostic Code 6100 (2014).

2. Effective March 17, 2014, the criteria for entitlement to a rating of 20 percent, but no greater, for the Veteran's service-connected bilateral hearing loss have been met. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107 (West 2002 & Supp. 2014); 38 C.F.R. §§ 4.85, 4.86, Diagnostic Code 6100 (2014).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Veterans Claims Assistance Act of 2000 (VCAA)

In an August 2008 letter, the RO satisfied its duty to notify the Veteran under 38 U.S.C.A. § 5103(a) (West 2002 & Supp. 2014) and 38 C.F.R. § 3.159(b) (2014). The RO notified the Veteran of: information and evidence necessary to substantiate the claim; information and evidence that VA would seek to provide; and information and evidence that he was expected to provide. The Veteran was informed of the process by which initial disability ratings and effective dates are assigned, as required by Dingess/Hartman v. Nicholson, 19 Vet. App. 473 (2006). 

The "duty to assist" contemplates that VA will help a claimant obtain records relevant to the claim, whether or not the records are in Federal custody, and that VA will provide a medical examination when necessary to make a decision on the claim. 38 C.F.R. § 3.159 (2014). VA has done everything reasonably possible to assist the Veteran with respect to the claim for benefits in accordance with 38 U.S.C.A. § 5103A (West 2002) and 38 C.F.R. § 3.159(c) (2014). Relevant service treatment and other medical records have been associated with the claims file. The Veteran was given VA examinations in October 2008, March 2012, March 2014, June 2104, and June 2015. The examination reports are fully adequate as the VA examiners fully addressed the rating criteria. The duties to notify and to assist have been met. 

Further regarding the duty to assist, the United States Court of Appeals for Veterans Claims (Court) has held that that provisions of 38 C.F.R. § 3.103(c)(2) impose two distinct duties on VA employees, including Board personnel, in conducting hearings: The duty to explain fully the issues and the duty to suggest the submission of evidence that may have been overlooked. Bryant v. Shinseki, 23 Vet. App. 488 (2010).

At his hearing the undersigned identified the issue, sought information as to treatment to determine whether all relevant records had been obtained, and sought information as to any changes in the disability since the last examination. Ultimately the claim was remanded for a new examination. The Board thereby met the duties imposed by 38 C.F.R. § 3.103(c)(2) as interpreted in Bryant. 

Increased Ratings

The present appeal involves the Veteran's claim that the severity of his service-connected hearing loss warrants a higher disability rating. Disability evaluations are determined by the application of the Schedule For Rating Disabilities, which assigns ratings based on the average impairment of earning capacity resulting from a service-connected disability. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

In order to evaluate the level of disability and any changes in condition, it is necessary to consider the complete medical history of the Veteran's condition. Schafrath v. Derwinski, 1 Vet.App. 589, 594 (1991). However, where an increase in the level of a service-connected disability is at issue, the primary concern is the present level of disability. Francisco v. Brown, 7 Vet.App. 55 (1994). Nevertheless, the Board acknowledges that a claimant may experience multiple distinct degrees of disability that might result in different levels of compensation from the time the increased rating claim was filed until a final decision is made. Hart v. Mansfield, 21 Vet. App. 505 (2007). The analysis in the following decision is therefore undertaken with consideration of the possibility that different ratings may be warranted for different time periods. 

The current version of the Ratings Schedule provides a table for ratings purposes (Table VI) to determine a Roman numeral designation (I through XI) for hearing impairment, established by a state-licensed audiologist including a controlled speech discrimination test (Maryland CNC), and based upon a combination of the percent of speech discrimination and the pure tone threshold average which is 
the sum of the pure tone thresholds at 1000, 2000, 3000 and 4000 Hertz, divided by four. See 38 C.F.R. § 4.85.

Table VII is used to determine the percentage evaluation by combining the Roman numeral designations for hearing impairment of each ear. The horizontal row represents the ear having the poorer hearing and the vertical column represents the ear having the better hearing. Id.

If impaired hearing is service-connected in only one ear, in order to determine the percentage evaluation from Table VII, the non-service-connected ear will be assigned a Roman Numeral designation for hearing impairment of I, subject to the provisions of §3.383 of this chapter. Id. 

A noncompensable evaluation is provided where hearing in the better ear is I and hearing in the poorer ear is I through IX; where hearing in the better ear is II, and hearing in the poorer ear is II to IV; or where there is level III hearing in both ears. A 10 percent disability rating is warranted where hearing in the better ear is I, and hearing in the poorer ear is X to XI; or where hearing in the better ear is II, and hearing in the poorer ear is V to XI; or where hearing in the better ear is III, and hearing in the poorer ear is IV to VI. A 20 percent disability rating is warranted where hearing in the better ear is III, and hearing in the poorer ear is VII to XI; or where hearing in the better ear is IV, and hearing in the poorer ear is VI to VIII; or where hearing in the better ear is V, and hearing in the poorer ear is V to VI. 38 C.F.R. § 4.85, Table VII, Diagnostic Code 6100.

Table VIa will be used when the examiner certifies that the use of speech discrimination test is not appropriate because of language difficulties, inconsistent speech discrimination scores, etc., or when indicated under the provisions of 38 
C.F.R. § 4.86. 38 C.F.R. § 4.85(c).

When the pure tone threshold at each of the four specified frequencies (1000, 2000, 3000, and 4000 Hertz) is 55 decibels or more, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIa, whichever results in the higher numeral. Each ear will be evaluated separately. 38 C.F.R. § 4.86(a).

When the pure tone threshold is 30 decibels or less at 1000 Hertz, and 70 decibels or more at 2000 Hertz, the rating specialist will determine the Roman numeral designation for hearing impairment from either Table VI or Table VIa, whichever results in the higher numeral. That numeral will then be elevated to the next higher. 38 C.F.R. § 4.86(b).

Pertinent case law provides that the assignment of disability ratings for hearing impairment are to be derived by the mechanical application of the Ratings Schedule to the numeric designations assigned after audiometry evaluations are rendered. Lendenmann v. Principi, 3 Vet. App. 345 (1992).

The Veteran underwent numerous VA examinations. In October 2008, pure tone thresholds for the ears were as follows:




HERTZ


1000
2000
3000
4000
RIGHT
25
55
50
55
LEFT
25
50
60
70

The pure tone average was 46 decibels in the right ear and 51 decibels in the left ear. Speech recognition scores were 86 percent in the right ear and 82 percent in the left ear. Such examination findings translate to level II hearing in the right ear and level IV hearing in the left ear. 38 C.F.R. § 4.85, Table VI. Applying Table VII, Diagnostic Code 6100, this equates to a 0 percent rating.
 
The Veteran underwent another VA examination in March 2012. The Board notes that the April 2014 remand refers to a May 2012 VA examination. The May 2012 examination was an orthopedic examination for an unrelated claim. At the March 2012 audiologic examination, pure tone thresholds for the ears were as follows:




HERTZ


1000
2000
3000
4000
RIGHT
40
60
65
65
LEFT
30
60
70
75

The pure tone average was 58 decibels in the right ear and 59 percent in the left ear. Speech recognition scores were 88 percent in the right ear; and 92 percent in the left ear. Such examination findings translate to level III hearing in the right ear and level II hearing in the left ear. 38 C.F.R. § 4.85, Table VI. 

At the Veteran's September 2013 Board hearing, he testified that the VA examination did not accurately reflect the severity of his disability, and that his disability had become more severe since the examination. 

The Veteran underwent another VA examination in March 2014. Pure tone thresholds for the ears were as follows:




HERTZ


1000
2000
3000
4000
RIGHT
70
80
85
95
LEFT
55
70
80
100

The pure tone average was 83 decibels in the right ear and 76 percent in the left ear. Speech recognition scores were 44 percent in the right ear; and 56 percent in the left ear. Such examination findings translate to level IX hearing in the right ear and level VIII hearing in the left ear. 38 C.F.R. § 4.85, Table VI. Applying Table VII, Diagnostic Code 6100, this equates to a 50 percent rating. Since the Veteran's hearing loss (in each ear) represented an exceptional pattern of hearing loss as defined by 38 C.F.R. § 4.86(a), Table VIa may be used if it reflects a higher level of hearing loss. The Board notes that, pursuant to Table VIa, the findings translate to level VII hearing in the right ear and level VI hearing in the left ear. Table VIa does not reflect a higher level of hearing loss. 

It appears that the March 2014 VA examination results were not before the Board when it issued its April 2014 remand. In it, the Board remanded for a new VA examination based on the Veteran's testimony that the disability had increased in severity since the March 2012 VA examination.

The Veteran underwent a VA examination in June 2014. Pure tone thresholds for the ears were as follows:




HERTZ


1000
2000
3000
4000
RIGHT
55
65
60
70
LEFT
45
60
70
80

The pure tone average was 63 decibels in the right ear and 64 percent in the left ear. Speech recognition scores were 86 percent in the right ear; and 74 percent in the left ear. Such examination findings translate to level III hearing in the right ear and level V hearing in the left ear. 38 C.F.R. § 4.85, Table VI. Applying Table VII, Diagnostic Code 6100, this equates to a 10 percent rating. Since the Veteran's hearing loss in the right ear represented an exceptional pattern of hearing loss as defined by 38 C.F.R. § 4.86(a), Table VIa may be used if it reflects a higher level of hearing loss. The Board notes that, pursuant to Table VIa, the findings translate to level V hearing in the right ear. Consequently, the examination findings translate to level V hearing in the right ear and level V hearing in the left ear. 38 C.F.R. § 4.85, Table VI. Applying Table VII, Diagnostic Code 6100, this equates to a 20 percent rating. 

In February 2015, the Board remanded the claim so that the RO could get an opinion that would reconcile the discrepancies between the March 2014 and June 2014 VA examinations.

The Veteran underwent another VA examination in June 2015. The examiner reviewed the claims file in conjunction with the examination. Pure tone thresholds for the ears were as follows:




HERTZ


1000
2000
3000
4000
RIGHT
45
65
70
70
LEFT
40
60
70
75

The pure tone average was 63 decibels in the right ear and 61 percent in the left ear. Speech recognition scores were 82 percent in the right ear; and 88 percent in the left ear. Such examination findings translate to level IV hearing in the right ear and level III hearing in the left ear. 38 C.F.R. § 4.85, Table VI. Applying Table VII, Diagnostic Code 6100, this equates to a 10 percent rating. No exceptional pattern of hearing loss was reflected in the examination findings. 

The June 2015 VA examiner submitted an addendum in which he rendered an opinion reconciling the varying examination findings. He noted that when the Veteran was examined in 2015, the air conduction thresholds in the right ear had significantly improved, suggesting that the conductive hearing loss component likely spontaneous resolved and/or was medically treated. He stated that he could not comment on the way it resolved without resorting to speculation. However, he noted that a resolved conductive component audiometrically can be show by the gradual improvement in air conduction thresholds and speech understanding in the right ear between the dates of March 2014 and June 2015, and essentially stable bone conduction thresholds throughout all examinations. He opined that the most accurate findings are likely the results performed in June 2015 based on the stable bone conduction thresholds and gradual reduction of air bone gaps noted on previous examinations, and lastly the inability to speculate on how both the March 2014 and June 2014 exams were performed (headphone placement, clinical procedures, individual equipment viability, patient's performance on the
earlier to exams, etc.).

Analysis

Prior to March 17, 2014
The Veteran has been assigned a 0 percent rating. This rating was based on the results of October 2008 and the March 2012 VA examinations. Both examinations showed pure tone averages and speech recognition scores which equated to a 0 percent rating for bilateral hearing loss. Exceptional patterns of hearing loss were not shown on either examination. Based on these audiological test results, a compensable rating is not warranted prior to March 17, 2014.

Effective March 17, 2014 
The Board notes that the Veteran underwent VA examinations in March 2014, June 2014, and June 2015. Applying Table VII, Diagnostic Code 6100 to each of the findings, results in disability ratings of 50 percent, 20 percent, and 10 percent respectively.

The Board finds that of the three VA examinations, the March 2014 VA examination represents the greatest outlier. The June 2014 and June 2015 VA examinations are relatively consistent. The pure tone threshold levels are identical (63) in the right ear and very close in the left ear (64 and 61 respectively). Likewise, the speech recognition scores are similar (86 percent and 82 percent in the right ear; 74 percent and 88 percent in the left ear). The March 2014 examination findings are in stark contrast (pure tone threshold levels 83 and 76 in the right and left ear respectively; speech recognition scores of 44 percent and 56 percent). 

Moreover, the June 2015 VA examiner was able to reconcile the varying findings to the Board's satisfaction. He also found that the most accurate findings are likely the results performed in June 2015. He provided an adequate rationale for that opinion (based on the stable bone conduction thresholds and gradual reduction of air bone gaps noted on previous examinations). 

Based on the audiological test results of June 2014 and June 2015, a rating in excess of 20 percent is not warranted.

However, the Board notes that the RO granted a 20 percent rating effective June 16, 2014. The Board finds that although the March 2014 VA examination findings are not consistent with the subsequent examinations, the examination does indicate that the severity of the Veteran's hearing loss had occurred at that time. Consequently, the Board finds that the rating of 20 percent is warranted effective March 17, 2014.

The Board acknowledges the Veteran's contentions regarding the impact of his hearing loss on his daily activities, and VA's obligation to resolve all reasonable doubt in the Veteran's favor. However, as noted previously, because assignment of disability ratings for hearing impairment are derived by a mechanical application of the rating schedule to the numeric designations assigned after audiometry evaluations are rendered there is no doubt as to the proper evaluation to assign. Lendenmann, supra; 38 C.F.R. § 4.85, Tables VI, VIA, and VII, Diagnostic Code 6100. Applying the audiological test results most favorable to the Veteran to the regulatory criteria, the Board is compelled to conclude that the preponderance of the evidence is against entitlement to a compensable rating prior to March 17, 2014, and against entitlement to a rating in excess of 20 percent effective March 17, 2014. Thus, there is no reasonable doubt to be resolved. The Veteran may always advance an increased rating claim should the severity of his hearing loss disability increase in the future.

The potential application of various provisions of Title 38 of the Code of Federal Regulations have also been considered but the record does not present such "an exceptional or unusual disability picture as to render impractical the application of the regular rating schedule standards." 38 C.F.R. § 3.321(b)(1); see also See Martinak v. Nicholson, 21 Vet. App. 447, 455 (2007) (noting that functional effects of hearing loss must be considered in an extraschedular determination). However, as discussed above, the evidentiary record in this case persuasively shows that the Veteran's hearing loss symptoms squarely match the type and degree of the examples set forth under the criteria for the current noncompensable and 20 percent schedular ratings. Consideration of an extraschedular rating under 38 C.F.R. § 3.321(b)(1) is not appropriate in such a case where the rating criteria reasonably describe the Veteran's disability level and symptomatology. See generally Thun v. Peak, 22 Vet.App. 111 (2008). The Board therefore finds that referral for extraschedular consideration under 38 C.F.R. § 3.321(b)(1) is not warranted in this case. 


ORDER

Entitlement to a compensable rating for hearing loss prior to March 17, 2014 is denied.

Entitlement to a rating of 20 percent, but no greater, is granted effective March 17, 2014



______________________________________________
ERIC S. LEBOFF
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs